# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BOBBY J. PENWELL,**

                               **CASE NO. 2:18-CV-1237**

    **Petitioner,**                    **JUDGE GEORGE C. SMITH**

                                 **Magistrate Judge Kimberly A. Jolson**

    **v.**

**WARDEN, CHILLICOTHE**
**CORRECTIONAL INSTITUTION,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that the Petition be **DENIED** and this action be **DISMISSED**.

## I. FACTS AND PROCEDURAL HISTORY

The Ohio Twelfth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} The facts of this case involve two criminal cases. In Case No. CR120160195 ("Case No. 195"), appellant was indicted in August 2016 on one count of burglary, a felony of the second degree. In Case No. CR120160270 ("Case No. 270"), appellant was indicted in October 2016 on 15 felony offenses involving burglary, theft, breaking and entering, and grand theft of a motor vehicle, and 6 misdemeanor theft offenses. Relevant to this appeal are the burglary count in Case No. 195, and a breaking and entering count (Count 10), a theft count (Count 11), and a grand theft of a motor vehicle count (Count 19), all felonies, in Case No. 270.

> {¶ 3} Appellant appeared before the trial court on December 14, 2016. Appellant pled guilty to the burglary count in Case No. 195, and to two counts of burglary, five counts of breaking and entering, seven counts of theft, and one count of grand theft of a motor vehicle in Case No. 270. In exchange for his guilty plea, the state dismissed the remaining counts.

{¶ 4} The trial court then proceeded to sentencing. In Case No. 270, the trial court merged Counts 1 and 2, Counts 12 and 13, Counts 14 and 15, Counts 16 and 17, and Counts 18 and 19, but refused to merge Counts 10 and 11. The trial court sentenced appellant to five years in prison in Case No. 195. In Case No. 270, the trial court sentenced appellant to consecutive five-year prison terms for his felony burglary convictions in Counts 1 and 5 and to consecutive six-month prison terms for his felony breaking and entering, theft, and grand theft of a motor vehicle convictions in Counts 10, 11, 12, 14, 16, and 19, for an aggregate 13–year prison sentence. The trial court further sentenced appellant to concurrent 180–day jail terms for his misdemeanor theft convictions in Counts 20 and 21. The trial court ordered that appellant's prison sentence in Case No. 270 be served consecutively to appellant's prison sentence in Case No. 195, for an aggregate prison term of 18 years.

{¶ 5} Appellant now appeals, raising four assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN NOT MERGING COUNTS TEN AND ELEVEN DURING SENTENCING IN VIOLATION OF DEFENDANT– APPELLANT'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE 1, SECTION 10.

***

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE ENHANCEMENT OF COUNT NINETEEN OF THE INDICTMENT TO A FELONY OF THE FOURTH DEGREE WAS IMPROPER, AS AN ALL– TERRAIN VEHICLE IS NOT A MOTOR VEHICLE.

***

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE TRIAL COURT ERRED IN FINDING DEFENDANT–APPELLANT GUILTY OF BURGLARY A FELONY OF THE SECOND DEGREE AS THE ELEMENTS STATED FAILED TO SATISFY THE REQUIREMENTS FOR A FELONY TWO.

***

{¶ 37} Assignment of Error No. 4:

{¶ 38} THE TRIAL COURT ERRED IN SENTENCING DEFENDANT–APPELLANT TO CONSECUTIVE SENTENCES.

*State v. Penwell*, 12th Dist. Nos. CA2016-12-020, CA2016-12-021, 2017 WL 3888063, at *1–5 (Ohio Ct. App. Sept. 5, 2017). On September 5, 2017, the appellate court affirmed the judgment of the trial court. *Id*. On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Penwell*, 151 Ohio St.3d 1514 (Ohio 2018).

On December 28, 2017, Petitioner filed a Request For Leave To File Application for Direct Reopening of Appeal Pursuant To App. R. 26(B) in the state appellate court. (ECF No. 4, PAGEID # 127.) This Court is unable to determine the status of those proceedings from the record here.

On October 15, 2018, Petitioner filed this *pro se* habeas corpus petition. He asserts that his convictions violate the Double Jeopardy Clause (claim one); that his convictions violate due process (claim two); and that he was denied the effective assistance of counsel because his attorney advised him to enter a guilty plea and could not raise his own incompetence on direct appeal (claim three).[1] It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## II.  STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562

---

[1] The record indicates, however, that new counsel represented Petitioner on direct appeal.

U.S. 86 (2011)); *see also Renico v. Lett,* 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has summarized these high standards:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d

389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 748–49. Ultimately, the burden of satisfying AEDPA's standards rests with the petitioner.

*See Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).

## III. DISCUSSION

As noted, Petitioner has brought three claims.

### A. Claim One

In claim one, Petitioner asserts that his convictions violate the Double Jeopardy Clause.

The state appellate court rejected this claim, reasoning as follows:

{¶ 8} Appellant argues the trial court erred by not merging his breaking and entering conviction in Count 10 and his theft conviction in Count 11 in Case No. 270 because they were allied offenses of similar import.

{¶ 9} Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review *de novo. State v. Stevens,* 12th Dist. Butler No. CA2015-09-020, 2017-Ohio-498, ¶ 9, citing *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28, 983 N.E.3d 1245. Pursuant to R.C. 2941.25, a trial court cannot impose multiple punishments for the same criminal conduct.

{¶ 10} In determining whether offenses are allied offenses of similar import and should be merged for sentencing, "courts must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if any of the following is true: (1) the defendant's conduct constitutes offenses of dissimilar import, (2) the defendant's conduct shows that the offenses were committed separately, or (3) the defendant's conduct shows that the offenses were committed with separate animus. *Id.* at paragraph three of the syllabus.

{¶ 11} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.* at ¶ 26. Two or more offenses of dissimilar import exist "when the

defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* The burden lies with the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *Stevens,* 2017-Ohio-498 at ¶ 10.

{¶ 12} At the plea hearing, the prosecutor provided the following statement of facts regarding the offenses in Counts 10 and 11:

On or about July 18, 2016, this is count ten, here in Fayette County, the defendant did knowingly trespass on * * * Wentz Road, Jeffersonville, Ohio, land or premises of another with purpose to commit a felony in violation of section 2911.13(B) and (C) of the revised code. In that case Your Honor the defendant did break into a vehicle and removed items from the car of one [J.B.]. In the car he removed * * * from a wallet he removed a debit card belonging to [M.M.]. He removed cash in the range of $40.00 to $100.00. This car was a 2002 Ford Focus.

{¶ 13} At the sentencing hearing, the trial court refused to merge Counts 10 and 11, finding that the breaking and entering of the vehicle and the subsequent theft of the wallet containing the credit card involved separate victims and separate animus.

{¶ 14} Despite appellant's argument to the contrary, we find that the breaking and entering conviction in Count 10 and the theft conviction in Count 11 are not allied offenses of similar import subject to merger for purposes of sentencing.

{¶ 15} First, the breaking and entering and theft offenses were of dissimilar import as they involved different victims and the harm from the offenses is separate and identifiable. The structure into which appellant trespassed was owned by one individual, while the credit card appellant stole belonged to another. Thus, not only did the offenses involve separate victims, but each victim suffered a separate and identifiable harm. As the Ohio Supreme Court stated, "When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *Ruff,* 2015-Ohio-995 at ¶ 26, 143 Ohio St.3d 114, 34 N.E.3d 892.

{¶ 16} Furthermore, the offenses were committed with a separate animus. In a similar context involving whether burglary and theft were allied offenses of similar import, we observed that

In order to commit burglary, appellant had to, by force, stealth, or deception, trespass in a separately secured or separately occupied portion of an occupied structure with the purpose to commit any criminal offense. Therefore, once inside the garage on Sauterne Drive, with the requisite intent, the burglary was complete. The theft offense did not occur until later, when appellant physically removed the .32 caliber revolver from the garage. At this time, grand theft of the firearm was complete. "Consequently, 'because one offense was completed before the other

offense occurred, the two offenses were committed separately for purposes of R.C. 2941.25(B) notwithstanding their proximity in time and that one was committed in order to commit the other.'"

> *State v. Back*, 12th Dist. Butler Nos. CA2015–03–037 and Butler Nos. CA2015-03-038, 2015-Ohio-4447, ¶ 12, quoting *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 16, and *State v. DeWitt*, 2d Dist. Montgomery No. 24437, 2012-Ohio-635, ¶ 33.

> {¶ 17} The same analysis applies here. Once appellant had trespassed into the unoccupied structure involved with purpose to commit a theft offense, the breaking and entering was complete. The separate act of stealing the credit card from a wallet found in a vehicle constituted the theft offense.

> {¶ 18} Appellant's first assignment of error is overruled.

*State v. Penwell*, 2017 WL 3888063, at *1–3.

Although the state appellate court rejected Petitioner's claim by reference to Ohio's statute on allied offenses, *i.e.*, O.R.C. § 2941.45, and did not explicitly refer to federal law addressing the constitutional mandates of the Double Jeopardy Clause, this Court has previously concluded that Ohio law in this regard is derived from the same concerns as those of the Double Jeopardy Clause. *See, e.g., Cody v. Jeffreys*, No. 2: 10–cv–974, 2013 WL 170268 at *4–5 (S.D. Ohio Jan.16, 2013) (citing *Palmer v. Haviland*, No. C–1–04–28, 2006 WL 1308219 (S.D. Ohio May 11, 2006)); *Spence v. Sheets*, 675 F.Supp.2d 792 (S.D. Ohio 2009); *Helton v. Jeffreys*, No. 2:06–cv–558, 2007 WL 1100428, at *4–*5 (S.D. Ohio April 10, 2007). Thus, although couched in terms of state law, the state court's decision rejecting Petitioner's claim is entitled to deference by this Court in its consideration of Petitioner's federal constitutional claim.[2]

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence

---

[2] To the extent that this claim raises an issue regarding the alleged violation of state law, that claim offers no basis for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a).

to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The traditional test for a double jeopardy claim is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to address the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether, in reality, the multiple charges constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

> The Supreme Court has interpreted the multiple-punishments aspect of the Double Jeopardy Clause as protecting defendants from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative. *See Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In other words, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see White v. Howes*, 586 F.3d 1025, 1035 (6th Cir.2009) ("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). When two different statutory provisions authorize punishment for the same act, "[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes." *United States v. Johnson*, 22 F.3d 106, 107–08 (6th Cir. 1994); *see Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("[T]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").

*Volpe v. Trim*, 708 F.3d 688, 696-97 (6th Cir. 2013). The Sixth Circuit has also made clear that a habeas court is bound by state court interpretation of legislative intent:

Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir.1989) (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. 673; *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974)). "Under the [D]ouble [J]eopardy [C]lause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent." Id. (citations omitted). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id.; see Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) ("[W]hen the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. Once a state court has answered that state-law question, there is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." (internal citation and alteration omitted)).

*Id*. (footnote omitted).

As discussed by the state appellate court, Petitioner's separate convictions on breaking and entering and theft survive the *Blockburger* test, involve separate victims, and were committed with a separate animus.  Consequently, claim one fails to provide a basis for relief.

## B.  Claim Two

In claim two, Petitioner asserts that he was denied due process.  In support of this claim, Petitioner states:

> The constitutional protections of the Due Process Clause of the Fourteenth Amendment prohibit[] state courts from depriving Petitioner of liberty or property as punishment for criminal conduct except to the extent authorized by state law.

(*Petition*, Doc. 1, PAGEID # 7).  Petitioner has not provided further clarification regarding the basis for this claim, and this Court cannot decipher the nature of this claim for relief or the manner in which he contends that his due process rights have been violated.

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the Petitioner must specify the nature of his grounds for relief and state the facts in support of each ground. Dismissal under Habeas Rule 2(c) is appropriate in cases where, as here, it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication. *See Rice v. Warden*, No. 1:14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (dismissal under Rule 2(c) appropriate where pleadings contain unintelligible and conclusory allegations and statements) (citations omitted); *Accord v. Warden, Lebanon Corr. Inst*., No. 2:12-cv-355, 2013 WL 228027, at *3 (S.D. Ohio Jan. 22, 2013) (nothing that while the court liberally construes a pro se prisoner's pleadings, it is not required to "conjure allegations" on the petitioner's behalf) (citations omitted). These are the circumstances here, and claim two is subject to dismissal on this basis.

**C. Claim Three**

In claim three, Petitioner asserts that he was denied the effective assistance of counsel. It is the position of the Respondent that Petitioner has procedurally defaulted this claim by failing to raise it on direct appeal. For the reasons that follow, the Undersigned agrees.

*1. Procedural Default*

AEDPA provides that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner

fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ). Where a petitioner has failed to exhaust claims but would find them barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails, for whatever reason, to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test described in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.*

### 2. Application

Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney told him he had no defense and advised him to enter a guilty plea.[3] However, Petitioner never presented this claim to the state courts. To the extent that this claim is readily apparent from the face of the record, Petitioner has thereby waived the claim for review in these proceedings. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.'" *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018) (citing *Hill v. Mitchell*, No. 1:98-CV-

---

[3] Petitioner also states that his attorney could not have been expected to raise his own incompetence on direct appeal. (*Petition* Doc. 1, PAGEID # 8). As previously noted, however, new counsel represented Petitioner on direct appeal. (*See Entry Appointing Counsel For Indigent Defendant*, Doc. 4, PAGEID # 46).

452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006)) (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967)).  Thus, Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise his claim on direct appeal, and, consequently, the first prong of the *Maupin* test is satisfied.  Moreover, Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of procedurally barred claims. *See, e.g.*, *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982).  In addition, the Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and adequate ground for denying federal habeas relief.  *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427– 29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).  With respect to *Maupin*'s independence prong, the Court concludes that in this context, Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law. Accordingly, after a review of the relevant case law, the Undersigned concludes that the first three *Maupin* factors are satisfied.

To the extent that Petitioner's claim may rely upon off-the-record evidence, it would properly be raised in a state post-conviction action; however, the time period for filing such an action has long since expired, and the record does not reflect that Petitioner could meet the stringent requirements for consideration of his claim in an untimely post-conviction action.  *See* O.R.C. § 2953.23; *see also Johnson v. Turner*, No. 2:14-cv-01908, 2017 WL 2633188, at *3 (S.D. Ohio June 19, 2017) (enforcing procedural default under these same circumstances) (citing *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013)).

Thus, Petitioner has procedurally defaulted claim three.  He may still obtain review of this claim on the merits, if he establishes cause for his procedural default, as well as actual prejudice.  "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default."

13

*Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla*, 370 F.3d 498.  Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him."  *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).  Petitioner has failed to establish cause for his procedural default.

The actual innocence exception to procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—i.e., evidence not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005).  The Court of Appeals for the Sixth Circuit has explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted).  Petitioner cannot meet these high standards here.

## IV.    CONCLUSION

Accordingly, the Undersigned **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


Date:  April 9, 2019                              /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE